In re CHASE & SANBORN CORP. f/k/a, General Coffee Corp., Debtor(s).

Paul C. NORDBERG, Creditor Trustee, Plaintiff,

v.

John Paul MURPHY, as Trustee for the Estate of Alberto Duque, Defendant.

Paul C. NORDBERG, Creditor Trustee, Plaintiff,

v.

COLOMBIAN COFFEE, INC., D.I.P., Defendant.

Bankruptcy No. 83–00889–BKC–TCB. Adv. Nos. 85–0704–BKC–TCB–A, 85–0705–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 2, 1985.

---

Sherman & Fischman, Ronald G. Neiwirth, Stroock & Stroock & Lavan, John H. Genovese, Miami, Fla., for creditor trustee.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, John Rogers Camp, Jr., Miami, Fla., for John Paul Murphy.

Hauser & Metsch, Lawrence Metsch, Miami, Fla., for Colombian Coffee, Inc.

John Paul Murphy, as trustee, Coral Gables, Fla., for Alberto Duque.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

Plaintiff is a liquidating trustee selected by the creditors and appointed through the chapter 11 plan confirmed in August 1984 for the debtor, Chase & Sanborn Corp. In these two adversary proceedings, the trustee seeks subordination of very large claims filed against this debtor's estate on behalf of two other related bankruptcy estates. Number 85–0704 is against the liquidating trustee for the estate of chapter 7 debtor Alberto Duque, a case presently pending before me. Number 85–0705 is against a chapter 11 debtor-in-possession, Colombian Coffee Co. This case is also pending before me.

The claim against Chase & Sanborn, which is involved in No. 85–0704 is claim # 347 in the amount of $11.9 million. The claim involved in No. 85–0705 is # 288 for $50 million damages multiplied by three as a R.I.C.O. claim, making a total of $150 million.

The claims of other creditors against the assets of Chase & Sanborn, which were sold last year, substantially exceed the assets of this debtor's estate. Therefore, subordination of these claims is as a practical matter the denial of these claims against the assets of this debtor. It presently appears completely unlikely that the claims of creditors against either of the defendants' bankruptcy estates can ever be satisfied through the administration of those cases. The essential conflict here, therefore, is whether the unaffiliated creditors of Chase & Sanborn must share the assets of Chase & Sanborn with the unaffiliated creditors of two other bankrupt entities, Duque and Colombian Coffee.

This debtor filed for bankruptcy on May 18, 1983. On the following day, Duque, Colombian Coffee and Domino Investments, a Cayman Islands corporation, also filed for bankruptcy. Duque dominated and controlled each of the other three entities. Through Domino, Duque held 100% control of Chase & Sanborn. Duque and members of his family held 100% control of Colombian Coffee.

Duque, a native of Colombia, so managed his own affairs and the affairs of the entities he controlled that it is not economically feasible now (if indeed it would be possible) to reconstruct the financial records of any of the four entities with even relative precision. All participants in these cases agree that the available records are a mess.

For the foregoing reason, and perhaps other reasons as well, Colombian Coffee sought substantive consolidation of these

four estates many months ago. (C.P. No. 1033). That application was fiercely resisted by other interested parties and, after a hearing, was denied. (C.P. No. 1062). That decision was not appealed and has become final.

Each of the parties before me has attempted through the investigation and testimony of capable and disinterested CPA's to reconstruct enough of the debtors' affairs to express general conclusions necessary to the resolution of the issue before me. Unfortunately, these diligent experts do not agree.

The plaintiff's proof through a financial consultant employed by Chase & Sanborn (which at that time was known as General Coffee Corporation) two weeks before bankruptcy has convinced me that this debtor has been grossly insolvent at least since September 30, 1982. He was able to establish with satisfactory precision that on the date of bankruptcy, May 18, 1983, the debtor was insolvent to the tune of $26 million, and he was able to work backward from that date to September 30, 1982, by adjustments for substantial transactions through available records of the debtor and from other sources. A certified audit, again prepared by independent CPA's, existed for the debtor as of September 30, 1982.

That audit showed the debtor to be solvent and was used to obtain a $35 million line of credit from a Boston banking syndicate. However, this witness has also demonstrated that a large part of the assets relied upon in the certified audit were fictitious. The huge inventories of coffee beans simply did not exist. With adjustment for the inflated assets, this debtor was seriously insolvent on the date of that audit.

There is no present basis known to me, however, to reject the other data which formed a part of that audit. The plaintiff's witnesses, by using that audit and the working papers of those independent auditors, have demonstrated that Chase & Sanborn was a net creditor with respect to Duque and the related entities controlled by him to the extent of approximately $5.7 million as of September 30, 1982. By the date of bankruptcy, May 18, 1983, that net creditor situation had increased to $13.5 million. The documentation for these transactions is so sparse that one must guess at their purpose and justification. Duque, who is presently in trial on criminal fraud charges, has invoked the Fifth Amendment and offers no help. At least $2 million was paid during this interval to Duque individually.

Colombian Coffee was the affiliate that supplied coffee beans processed by Chase & Sanborn. It received payment through a letter of credit for $2.1 million in February, 1983, about 90 days before bankruptcy, upon bills of lading which were found to be fraudulent, representing fictitious coffee.

Plaintiff's complaint against each defendant is cast in three counts. The first alleges preferential transfers under 11 U.S.C. § 547. The second alleges fraudulent transfers under § 548. At trial, plaintiff abandoned count 1 as to the estate of Duque. Plaintiff does not seek the recovery of anything under any of these counts. The bankruptcy automatic stay in § 362(a) would prevent such a recovery. Instead, plaintiff invokes § 502(d) which requires that this court:

"disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 547, 548 ... of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable ..."

At trial, with the consent of all the parties, the trial was restricted to the issues presented by count 3, leaving counts 1 and 2 to be tried if plaintiff fails to prevail on count 3.

Count 3 is based upon § 510(c)(1):

"after notice and a hearing, the court may (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim ..."

The bankruptcy doctrine of equitable subordination had its genesis in *Taylor v. Standard Gas & Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939) and *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). It remained a judicially devised rule until the 1978 enactment of § 510(c)(1).

In *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir. 1977), the basic principles were announced as follows:

> "Three conditions must be satisfied before exercise of the power of equitable subordination is appropriate.
>
> (i) The claimant must have engaged in some type of inequitable conduct ...
>
> (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant ...
>
> (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act."

### THE CLAIM FOR DUQUE

■ There is no question that Duque had and exercised complete control over Chase & Sanborn. He was, therefore, an "insider." § 101(25)(B)(iii). As such he occupied the role of a fiduciary. The financial records available to the plaintiff and to this court make it clear that he co-mingled the credit and assets of the several entities which he controlled, including this debtor and Colombian Coffee, and used those assets to serve his individual purpose without any regard for the interests of unaffiliated creditors of the respective entities. Each entity was, therefore, an alter ego of Duque.

It is clear to me from the record available to the plaintiff and to this court that as a result of these interaffiliate transactions, Chase & Sanborn was a net creditor with respect to Duque and the related entities controlled by him to the extent of $13.5 million on the date of bankruptcy. However, Duque failed to maintain or preserve an adequate financial record which would enable an independent auditor to certify today with acceptable precision that Chase & Sanborn occupied a net creditor situation on the date of bankruptcy with respect to any *individual* affiliate, including Duque.

The foregoing conduct on Duque's part was inequitable and resulted in an injury to the creditors of Chase & Sanborn because it impeded, if not prevented, the establishment of claims against the individual affiliates. For the same reason, Duque's misconduct conferred an unfair advantage on Duque by impeding or preventing the plaintiff from defeating the claims of Duque and Colombian Coffee under the provisions of § 502(d). It would be completely inequitable to permit Duque to benefit at the expense of the unaffiliated creditors of Chase & Sanborn from the consequences of his own inequitable conduct. I agree with the plaintiff, therefore, that the claim for Duque must be subordinated to the claims of all unaffiliated creditors. This conclusion is not inconsistent with any provision of the Act.

The defense offered by Murphy as the trustee for Duque's estate, that no inequitable conduct is charged against Murphy, is unpersuasive. Murphy's claim as trustee for Duque's estate cannot exceed Duque's claim and is subject to every infirmity of that claim. Plaintiff is not required to prove misconduct on the part of Murphy.

### THE CLAIM FOR COLOMBIAN COFFEE

■ By definition, Colombian Coffee was an "affiliate" of Chase & Sanborn. § 101(2)(B). By definition, therefore, Colombian Coffee was also an "insider" of Chase & Sanborn. § 101(28)(E). Colombian Coffee, therefore, also dealt with Chase & Sanborn as a fiduciary. The facts which establish this relationship between the parties, unlike other facts pertinent to this case, are without significant dispute.

It is clear that the claims of fiduciaries: "are subjected to rigorous scrutiny and where any of their contracts or engagements is challenged the burden is on [the fiduciary] not only to prove the good

faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939).

The facts related in the foregoing discussion of the Duque claim provide at least a sufficient basis to overcome the prima facie validity of Colombian Coffee's $150 million claim against Chase & Sanborn and, therefore, shift to Colombian Coffee the burden of proving its inherent fairness. Colombian Coffee has been unable to carry that burden. It cannot disassociate itself from the consequences of the misconduct of Duque, its principal.

For the foregoing reason, therefore, each statement made above in connection with the analysis of the Duque claim is equally applicable to the Colombian Coffee claim. I agree with the plaintiff, therefore, that the Colombian Coffee claim against the Chase & Sanborn assets must be subordinated to the claims of the unaffiliated creditors of Chase & Sanborn.

As is required by B.R. 9021(a), a separate judgment will be entered in each of these adversary proceedings in favor of the plaintiff and subordinating the respective claims under § 510(c)(1). Costs may be taxed on motion.